IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **HILDA FELICIANO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | **CIVIL ACTION NO. _____** |
| **ENVOY AIR, INC., ENVOY AVIATION GROUP INC., AMERICAN AIRLINES GROUP INC.** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDE OF SAID COURT:

COMES NOW, Plaintiff, HILDA FELICIANO (hereinafter "Plaintiff or Ms. Feliciano"), and files this, her Original Complaint against ENVOY AIR, INC., ENVOY AVIATION GROUP INC., and AMERICAN AIRLINES GROUP INC. (hereinafter collectively known as "Defendants") and in furtherance thereof, would respectfully show unto this Court as follows:

**I.   PARTIES AND SERVICE**

1.   Plaintiff Hilda Feliciano is currently a resident of Bedford, Texas in Tarrant County, Texas. Plaintiff is an "eligible employee" under the Family and Medical Leave Act of 1993 (hereinafter "FMLA") as she worked for a covered employer at all times pertinent to this suit, was employed for that employer for more than 12 months, had been employed for at least 1,250 hours of service in that 12 month period and had been employed at a worksite where the employer had 50 or more employees within a 75 mile radius. Further, the employer acknowledged that Plaintiff was eligible for FMLA coverage by 29 C.F.R 835.120 or alternatively, the Defendant(s) represented as such. Plaintiff is an "eligible employee" under the Americans with

Disabilities Act (hereinafter "ADA"). An ADA individual with a disability is defined as a person who: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment or alternatively, Defendant(s) represented Plaintiff as such. Plaintiff is a covered employee under the Texas Commission on Human Rights Act, Texas Labor Code Ch. 21 (hereinafter "TCHRA").

2. Defendant Envoy Air, Inc., which is reported to be under the umbrella of Envoy Aviation Group Inc. and American Airlines Group Inc., is a Delaware corporation and has its principal place of business at 4301 Regent Blvd., Irving, Texas. Defendant Envoy Aviation Group Inc. is a Delaware corporation with its principal place of business at 4301 Regent Blvd., Irving, Texas. Defendant American Airlines Group Inc. is a Delaware corporation with its principal place of business at 4255-4333 Amon Carter Blvd, Fort Worth, Texas 76155. All three entities report they may be served through registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Inco at 211 E. 7th Street, Suite 620 Austin, Texas 78701. Defendants are employers within the scope of the ADA and Title VII because they have more than 15 employees. Defendants are employers within the scope of the FMLA because they are private-sector employers that employ 50 or more employees in 20 or more workweeks in the current or previous calendar year.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter under 28 U.S.C § 1331, 29 U.S.C. § 2617 (a)(2), and 42 U.S.C. § 2000e-5(f)(3) (incorporated into the ADA via 42 U.S.C. § 12117) because this matter involves controversies arising under the laws of the United States, including the ADA, FMLA and Title VII.

4. This Court has supplemental jurisdiction over state law claims herein discussed under 28 U.S.C. § 1367(a) because they arise out of the same case or controversy.

5.  Venue is proper in the Northern District of Texas, under 42 U.S.C. § 2000e-5(f), and 28 U.S.C. § 1391(b) and (c), because Defendants regularly conduct business in this District and the events forming the basis of this suit occurred in this District.

6.  All conditions precedent to jurisdiction have occurred or have been met.

7.  A charge of employment discrimination was filed with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 300 days of the commission of the unlawful employment practices alleged in this petition.

8.  The EEOC Determination and Notice of Right to Sue was mailed out on October, 12, 2023 and received several days later.

9.  This Complaint has been filed within 90 days of the receipt of the EEOC notification of right to sue.

10. The Plaintiff, having exhausted all the administrative remedies, now files her lawsuit against the Defendants, on the basis of Disability and for violations of the ADA, FMLA, Title VII and TCHRA.

### III. FACTUAL SUMMARY

11. Ms. Feliciano has been employed by the Defendant(s) for the last thirty-three (33) years.

12. In 2020, after the COVID pandemic hit, the Defendant(s) directed Ms. Feliciano's position to work remotely from their homes. The nature of their work, being done fully on computers, allowed for a very seamless transition from in office to work from home.

13. In 2021 Ms. Feliciano was diagnosed with cancer.

14. On April, 6th 2022, Ms. Feliciano received a companywide communication informing her that the remote work had ended and each department was to determine how their members would work.

15. Senior management for Ms. Feliciano's department determined and notified her on April 28th 2022, that work from home would be eliminated effective May 2nd 2022.

16. Ms. Feliciano requested that she be able to remain work from home until her chemotherapy treatment was scheduled to conclude on June 30th 2022.

18. Cindy Smith, Ms. Feliciano's manager, declined Ms. Feliciano's accommodation and told Ms. Feliciano she would have to work in person and that failure to be in person would result in her having to take unpaid intermittent FMLA.

19. On May 5th 2022, Ms. Feliciano's physician provided a letter to Defendant(s) notifying them that their directive for Ms. Feliciano's care was that she work remotely due to her condition, treatment and immunocompromised state.

20. On May 6th through May 9th, Ms. Feliciano made multiple attempts to contact her management by sending emails to Cindy Smith, Elise Shire and Roddrick West (HR representative).

21. Ms. Feliciano received no response or recognition of her disability accommodation.

22. Ms. Feliciano, feeling disregarded, sent a final email specifically stating she was invoking her rights under the ADA.

23. After 5 days of agonizing anxiety and fear Ms. Feliciano was finally contacted by Roddrick West on May 11th 2022 not to conclude her request, but to finally confirm Ms. Feliciano that her request had been received and was being referred to an ADA Manager.

24. On May 13th, after having not been contacted by the ADA Manager, Ms. Feliciano sent a follow-up email to Rodderick West requesting that he send contact information for the ADA Manager so that Ms. Feliciano could follow up.

25. Ms. Feliciano's received no response to her simple request to Rodderick West, but instead received a call on May 13th 2022 from Elise Shire informing her that she was "suspended" for reasons she was unauthorized to say and Ms. Feliciano was mandated to have a meeting the next day with Rodderick West, Leslie Barrett, Cindy Schmidt and Elise Shire.

26. On May 16th Ms. Feliciano, during her "suspension meeting", was told that she was suspended pending an investigation. Again, no one would let her know what the investigation was. This tactic is nothing less than meant to intimidate and retaliate against Ms. Feliciano.

27. On May 20th 2022, after eleven (15) days had passed from her initial request for an accommodation, she was finally contacted by the ADA Manager.

28. The ADA manager did not give Ms. Feliciano the reasonable accommodation that was requested or directed by her physicians. Instead, to punish, retaliate, humiliate and ostracize Ms. Feliciano she was directed that she would have to come onto campus, but would be provided with a "private" place to work.

29. Ms. Feliciano, being the upstanding corporate citizen that she had been for over thirty years, complied with the egregious suspension.

30. On June 22nd 2022, Ms. Feliciano, still being kept in the dark as to the circumstances surrounding her suspension, was informed by Shire, Schmidt and Roddreick that her suspension was lifted.

31. The suspension letter stated that the term of the suspension was May 16th through June 30th and was with pay.

32. Ms. Feliciano was only paid for May 16th – 17th and did not receive the stated pay for the remaining weeks of the suspension. To this day, Plaintiff has never been made whole.

33. Ms. Feliciano would later discover that her co-workers were receiving work from home days.

34. Ms. Feliciano was never given this equal opportunity to work from home.

35. In addition to the outrageous failure to accommodate her request, Defendant(s) went out of their way to further punish, retaliate, humiliate and ostracize Ms. Feliciano by allowing the other members of her department to enjoy work from home days while she was directed, while fighting for her life with cancer, to a suspension.

36. From October 10th through October 23rd 2022 Ms. Feliciano submitted a request for FMLA to receive additional treatment and procedures for her cancer.

37. On October 24th 2022, upon her return, she notified the FMLA team of her return.

38. On November 4th 2022 she received her pay for the period ending October 28th.

39. On November 11th 2022 Ms. Feliciano was not paid for her October 30th – November 12th pay period. She emailed her manager to let her know of the issue.

40. The response Ms. Felciano received from the manager was that she was inactive in the system and had failed to inform the team of the FMLA return.

41. Due to the stress of not receiving her pay and all of the economic hardships that caused for Ms. Feliciano on top of having just returned from surgery, Ms. Feliciano was hospitalized due to mental instability from November 16th through November 22nd 2022.

42. Ms. Feliciano was discriminated against and harassed by having her workload was reduced without her request. Ms. Feliciano took pride in her job and did it well – she did not wish to have her tasks delegated to others while being given marginal tasks.

43. Due to the work changes, Ms. Feliciano took an internal transfer to a new position.

## VI.   CAUSES OF ACTION

**COUNT ONE:   DISCRIMINATION OR DISPARATE TREATMENT IN VIOLATION OF THE ADA**

44. Plaintiff, during the timeframe pertinent to this claim, had a disability within the meaning of the ADA.

45. Plaintiff, during the timeframe pertinent to this claim, was a qualified individual able to perform the essential functions of her position.

46. Plaintiff's disability and/or request for an accommodation motivated the disparate behaviors of the Defendant(s) directed at the Plaintiff as described above.

**COUNT TWO:   FAILURE TO ACCOMODATE IN VIOLATION OF THE ADA**

47. Plaintiff, during the timeframe pertinent to this claim, had a disability within the meaning of the ADA.

48. Plaintiff, during the timeframe pertinent to this claim, was a qualified individual able to perform the essential functions of her position.

49. Plaintiff informed Defendant(s) of a need for an accommodation due to her disability.

50. Providing Plaintiff the ability to work from home, as her physician's instructed, would have been reasonable, meaning that the costs of that accommodation wouldn't have clearly exceeded its benefits.

51. Defendant(s) failed to provide the Plaintiff the reasonable accommodation as described above.

**COUNT THREE:  HARASSMENT IN VIOLATION OF THE ADA**

52. Plaintiff, during the timeframe pertinent to this claim, had a disability within the meaning of the ADA.

53. Plaintiff, during the timeframe pertinent to this claim, was a qualified individual able to perform the essential functions of her position.

54. Plaintiff was subjected to multiple instances of harassing behaviors by Defendant(s) as described above.

55. Defendant(s) harassing behaviors were motivated by the fact that Plaintiff had a disability as defined by the ADA and/or sought an accommodation for that disability.

56. The conduct of the Defendant(s) was so severe or pervasive that a reasonable person with Plaintiff's circumstance and disability would find the conduct of the Defendant(s) to be hostile or abusive.

57. Plaintiff genuinely believes her work environment was hostile and/or abusive as a result of the Defendant(s) conduct.

**COUNT FOUR:  RETALIATION IN VIOLATION OF THE ADA**

58. Plaintiff engaged in the ADA protected activity of seeking an accommodation.

59. Plaintiff was subjected to a materially adverse action at the time the protected conduct occurred.

60. There was a causal connection between Plaintiff's request for an accommodation and the Defendant(s) conduct.

**COUNT FIVE:  INTERFERENCE IN VIOLATION OF THE FMLA**

61. Plaintiff, during the timeframe pertinent to this claim, had cancer.

62. Plaintiff's cancer was a "serious health condition" and requires continuing treatment by a healthcare provider.

63. Plaintiff gave appropriate notice of her need to be absent from work.

64. Defendant(s) interfered with the exercise of Plaintiff's right to protected leave.

**COUNT SIX:    DISCRIMINATION IN VIOLATION OF THE FMLA**

65. Plaintiff, during the timeframe pertinent to this claim, had cancer.

66. Plaintiff's cancer was a "serious health condition" and requires continuing treatment by a healthcare provider.

67. Plaintiff gave appropriate notice of her need to be absent from work.

68. Plaintiff was placed on suspension, given a reduction in sophistication of work, and harassed by managers upon her return from leave.

69. Discrimination was directed at Plaintiff on more than one occasion after at least two FMLA protected leave periods.

70. Plaintiff's taking leave was a determinative factor in Defendant(s) conduct.

**COUNT SEVEN:    RETALIATION IN VIOLATION OF THE FMLA**

71. Plaintiff made an informal complaint to her employer asserting rights under the FMLA.

72. Plaintiff was subjected to a materially adverse action after the protected conduct occurred.

73. There is a causal connection between Plaintiff's informal complaint and the retaliatory actions taken by the Defendant(s).

**COUNT EIGHT:    DISCRIMINATION IN VIOLATION OF THE TCHRA**

74. The Plaintiff, during the timeframe pertinent to this claim, had a disability.

75. The Plaintiff, during the timeframe pertinent to this claim, was qualified for the job.

76. The Plaintiff suffered adverse treatment by the Defendant(s) because of her disability.

**COUNT NINE:    FAILURE TO ACCOMMODATE IN VIOLATION OF THE TCHRA**

77. The Plaintiff, during the timeframe pertinent to this claim, had a disability

78. The Defendant(s) had notice of the disability.

79. The reasonable accommodation requested would have allowed the plaintiff to perform the essential functions of her position.

80. The Defendant(s) refused the Plaintiff a reasonable accommodation.

**COUNT TEN:    RETALIATION IN VIOLATION OF THE TCHRA**

81. The Plaintiff engaged in protected activity.

82. Defendant(s) took an adverse action against her.

83. A causal connection ecists between her protected activity and the adverse actions of Defendant(s).

## V.    JURY DEMAND

84. Plaintiff demands a jury trial.

## VI.    PRAYER

WHEREFORE, Plaintiff respectfully request that the Court:

A.    Award to Plaintiff a judgement against the Defendants for:

    1.    Actual damages;

    2.    Past and future lost wages;

    3.    Compensatory, liquidated, and exemplary damages in the maximum amount permitted by law;

4. Such additional equitable relief as may be appropriate;

5. Pre- and post-judgement interest;

6. Attorneys' fees; and

7. Costs of court.

8. Punitive or exemplary damages.

Respectfully submitted,

_____
Gustavo L. Mignucci
State Bar No. 24102202
The Mignucci Firm PLLC
14180 N Dallas Parkway, Suite 714
Dallas, TX 75254
(972) 822-0899 Telephone
(972) 391-7707 Facsimile
gus@mignuccilawfirm.com

**ATTORNEY FOR PLAINTIFF**